DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Amy Boden, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of his paternal grandmother. We affirm.
 {¶ 2} Ms. Boden is the mother of K.K., born December 28, 1999, as well as other minor children who are not at issue in this appeal. The father of K.K. is also not at issue in this appeal. According to the allegations in the complaint filed by Summit County Children Services Board ("CSB"), K.K. was taken into custody by Barberton Police pursuant to Juv.R. 6 on May 22, 2003, following an alleged domestic violence incident between Ms. Boden and her paramour. On June 2, 2003, K.K. was returned to his mother's custody, but the matter proceeded to adjudication and, on August 5, 2003, K.K. was adjudicated a dependent child. Shortly thereafter, the trial court ordered that K.K. remain with his mother with an order of protective supervision.
 {¶ 3} On March 19, 2004, Ms. Boden was incarcerated for failing to comply with a condition of her probation by attempting to falsify a urine sample.[1] She admitted to her probation officer that she had attempted to falsify the urine sample because she knew that it would test positive for the presence of drugs. Consequently, on March 22, 2004, CSB moved the trial court for a change of disposition to emergency temporary custody and then legal custody to K.K.'s paternal grandmother. That same day, the magistrate ordered that K.K. be placed in the emergency temporary custody of CSB and scheduled a hearing on the issue for the next day. Following a hearing on the issue, the magistrate ordered that CSB be given emergency temporary custody of K.K. CSB placed K.K. in the home of his paternal grandmother.
 {¶ 4} On April 30, 2004, a hearing commenced before a magistrate on the legal custody motion. Following two days of evidence, the magistrate determined that legal custody to the paternal grandmother was in the best interest of K.K. On June 16, the trial court adopted the magistrate's decision and ordered that K.K. be placed in the legal custody of his paternal grandmother. Ms. Boden filed timely written objections to the magistrate's decision. On September 27, 2004, the trial court overruled Ms. Boden's objections. Ms. Boden appeals and raises two assignments of error.
 {¶ 5} Before reaching the merits of Ms. Boden's assignments of error, this Court must determine whether it has jurisdiction to hear this appeal. Section 3(B)(2), Article IV of the Ohio Constitution limits this Court's appellate jurisdiction to the review of final judgments of lower courts. For a judgment to be final and appealable, it must satisfy the requirements of R.C.2505.02 and, if applicable, Civ.R. 54(B). Chef Italiano Corp. v.Kent State Univ. (1989), 44 Ohio St.3d 86, 88.
 {¶ 6} At the oral argument in this case, this Court raised a question about the finality of the order Ms. Boden appealed, because the September 27, 2004 order attached to her brief does not appear to be final. Specifically, the September 27, 2004 order attached to the appellant's brief, in which the trial court overruled appellant's objections to the magistrate's decision, does not independently enter judgment. This Court has held repeatedly, most notably in Harkai v. Scherba Industries, Inc.
(2000), 136 Ohio App.3d 211, 218, that a trial court cannot merely adopt a magistrate's decision but must enter its own judgment that sets forth "the outcome of the dispute and the remedy provided." Id. The September 27, 2004 order attached to the appellant's brief does not satisfy that requirement and does not appear to be a final, appealable order.
 {¶ 7} A review of the full record in this case, however, reveals that Ms. Boden has appealed from a final, appealable order. Although the September 27 order of the trial court does not satisfy the Harkai requirements for finality, a prior order of the trial court does. On June 16, 2004, the trial court entered judgment that adopted the magistrate's decision and ordered that "[K.K.] be placed in the legal custody of his paternal grandmother, Carolyn Kelly." The order further indicated that the filing of timely, written objections to the magistrate's decision would "operate as automatic stay of execution of this judgment, pending this court's ruling on those objections."
 {¶ 8} The trial court's June 16 judgment was entered pursuant to Juv.R. 40(E)(4)(c). Juv.R. 40(E)(4)(c) [and, in verbatim language, Civ.R. 53(E)(4)(c)] provides, in relevant part:
"The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered."
 {¶ 9} When Juv. R. 40 and Civ.R. 53 were amended to add the above language, App.R. 4 was also amended to provide that the filing of timely written objections will toll the time to appeal the original judgment until the trial court disposes of the objections. See Staff Notes to Civ.R. 53 (noting that the amendment to allow tolling of appeal time is akin to tolling the notice of appeal when a motion for new trial or a motion for judgment notwithstanding the verdict is filed). App.R. 4(B)(2) now provides:
"In a civil case or juvenile proceeding, if a party files a timely motion for judgment under Civ. R. 50(B), a new trial under Civ. R. 59(B), vacating or modifying a judgment by an objection to a magistrate's decision under Civ. R. 53(E)(4)(c) or Rule 40(E)(4)(c) of the Ohio Rules of Juvenile Procedure, or findings of fact and conclusions of law under Civ. R. 52, the time for filing a notice of appeal begins to run as to all parties when the order disposing of the motion is entered."
 {¶ 10} By amending App.R. 4 to allow a tolling of appeal time, the Supreme Court clearly intended that its amendment to Civ.R. 53 and Juv.R. 40 authorized trial courts to issue final, appealable orders prior to the filing of objections to the magistrate's decision, but that those judgments would be temporarily stayed upon the filing of timely written objections.
 {¶ 11} Had there been no timely, written objections to the magistrate's decision, the trial court's June 16 order would have been final and appealable at that time. The judgment was automatically stayed, however, when Ms. Boden timely filed written objections to the magistrate's decision. Under the explicit terms of Juv.R. 40(E)(4)(c) and App.R. 4(B)(2), the trial court's June 16, 2004 order could not become final and appealable until the trial court explicitly disposed of the objections. See State ex rel. Papp v. James (1994),69 Ohio St.3d 373 (holding that the filing of a proper motion for findings of fact and conclusions of law prevents an appeal from the prior judgment until the trial court disposes of the motion).
 {¶ 12} The trial court's June 16 order became final and appealable when the trial court disposed of the objections on September 27, 2004. In its September 27 order, the trial court clearly disposed of the objections to the magistrate's decision by explicitly overruling all of them. The order further indicated that "[a]ll orders, not inconsistent with the orders herein, remain in full force and effect." Thus, the order implicitly indicated that it was adhering to June 16 judgment.
 {¶ 13} On May 6, 2005, a few days after the oral argument when this Court had questioned the finality of the order appealed, the trial court issued an entry "correcting" its September 27 order. The May 6 order stated that the September 27 entry was corrected to reflect that the objections are overruled and the court judgment entry and order of June 16, 2004, is "hereby adopted." By indicating that it was adopting its June 16 order, the trial court explicitly indicated that it was adhering to its prior order.
 {¶ 14} The trial court's May 6 correcting entry, however, was not necessary to lift the stay on the June 16 judgment. The trial court's September 27 order was sufficient to establish this Court's appellate jurisdiction even without the trial court filing its May 6 "correcting" entry. While it would be a better practice for a trial court to explicitly indicate its disposition of each objection and whether it "vacates, modifies, or adheres to the judgment previously entered" when it disposes of post-judgment objections to a magistrate's decision under either Juv.R. 40(E)(4)(c) or Civ.R. 53(E)(4)(c), through its September 27 order, by explicitly overruling all objections, the trial court implicitly indicated that it was adhering to its June 16 judgment and that the stay on the June 16 judgment was lifted.
 {¶ 15} Consequently, the trial court's June 16 judgment, following the trial court's disposition of the objections on September 27, is a final, appealable order.
 {¶ 16} Although this Court may have suggested that the parties point to a single, final judgment entry that defines their rights, that has not been the precise holding of the cases. Specifically, this Court has repeatedly quoted the following statements when assessing whether a trial court's "judgment" following objections to a magistrate's decision is sufficient:
"The matters should be disposed of `such that the parties need not resort to any other document to ascertain the extent to which their rights and obligations have been determined.' Daly v.Martin (May 14, 1997), 9th Dist. No. 2599-M, quoting Lavelle v.Cox (Mar. 15, 1991), 11th Dist. No. 90-T-4396 (Ford, J, concurring). See, also, In re Zakov (1995),107 Ohio App.3d 716, 717 (stating that the trial court `must sufficiently address [the] issues so that the parties may know of their rights and obligations by referring only to that document known as the judgment entry')." Bergin v. Berezansky, 9th Dist. No. 21451, 2003-Ohio-4266, at ¶ 5.
 {¶ 17} Although the brief language quoted above might suggest that this Court has jurisdiction only if there is single judgment entry to define the parties' rights and obligations, these sentences must be read in the full context of the cases from which they are taken. The analysis in Daly, the predecessor toHarkai, focused on the definition of "judgment" and whether a trial court's judgment could incorporate or make reference to a magistrate's decision and Daly concluded that it could not. The trial court must enter an independent judgment and cannot leave that task to a magistrate who lacks judicial authority to enter "judgments." The holding in Daly did not address the issue of whether a prior judgment of a judge is insufficient to support a subsequent judgment. We decline to extend the holding of Daly
to such a circumstance.
 {¶ 18} Likewise, the language quoted above from In re Zakov
was written within the context of whether the trial court is required to enter a "judgment" that is distinct from the referee's or magistrate's "decision." Again focusing on the referee's lack of judicial authority to enter a "judgment," Inre Zakov stressed that there must be an independent judgment of the trial court. Thus, the fact that the sentence quoted above refers to the "judgment entry" in the singular, that language was used to clarify that the judgment entry cannot rely on the referee's decision but must be an independent judgment by the trial judge. There was no issue as to whether the trial judge was required to issue all relief in the case in a single judgment entry, as there was no second "judgment" in that case.
 {¶ 19} The trial court's June 16 and September 27 orders substantially complied with the requirements of Juv.R. 40 and App.R. 4, as well as the requirements of Civ.R. 54(A), as explained by this Court is Harkai. Consequently, Ms. Boden has appealed from a final, appealable order and this Court has jurisdiction to review the merits of her appeal.
 Assignment of Error I
"The trial court erred by granting legal custody to a relative where the relative did not file a motion requesting legal custody and the moving agency was without authority to file a motion for such a change of disposition."
 {¶ 20} Through her first assignment of error, Ms. Boden contends that the trial court was without authority to place K.K. in the legal custody of the paternal grandmother because the grandmother did not file a motion for legal custody but instead, CSB filed a motion on her behalf. Ms. Boden relies primarily on R.C. 2151.353(A)(3), which authorizes the trial court, following an adjudication that a child is dependent, neglected, or abused, to grant legal custody to either parent or "any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child." Ms. Boden maintains that, because the paternal grandmother did not herself file a motion for legal custody, the trial court did not have authority to place K.K. in her legal custody. We disagree.
 {¶ 21} Although R.C. 2151.353(A)(3) does indicate that the trial court may grant legal custody to any other person who files a motion prior to the dispositional hearing, Ms. Boden cites no authority to support her position that the trial court lacks authority to consider a motion filed by CSB on behalf of a person seeking legal custody. The authorities cited by Ms. Boden each address the trial court's lack of authority to grant legal custody to a non-parent when no motion was filed by anyone prior to the dispositional hearing. See, e.g., In re Lewis (Sept. 22, 1999), 9th Dist. No 98CA007237. Thus, the parties lacked notice and an adequate opportunity to present evidence on the issue at the dispositional hearing. See id.
 {¶ 22} Other appellate courts have emphasized that the dependency and neglect statutes require the filing of a pre-hearing motion, raising the dispositional option of legal custody to a non-parent, as a procedural device to protect the due process rights of the parents. See, e.g., In re Barcelo
(June 26, 1998), 11th Dist. No. 97-G-2071; In re Fleming (July 22, 1993), 8th Dist. No. 63911. Emphasizing a parent's "essential" right to the custody of her children, the Fleming
court stressed that "compliance with the statutory mandates as set forth in Chapter 2151. et seq. [is] required to satisfy the dictates of the due process clause[.]"
 {¶ 23} There was no violation of Ms. Boden's due process rights here. CSB filed a motion, seeking to have K.K. placed in the legal custody of the paternal grandmother. Ms. Boden had adequate notice that the issue would be considered by the court and came to the dispositional hearing prepared to litigate the issue. A review of the transcript of proceedings reveals that the entire dispositional hearing was focused solely on the issue of whether K.K. should be placed in the legal custody of his paternal grandmother, and that Ms. Boden actively participated in the proceedings. Viewed from a due process perspective, Ms. Boden's position is no better or worse based upon whether CSB filed on behalf of paternal grandmother or whether she filed on her own behalf.
 {¶ 24} It also should be emphasized that Ms. Boden raised no objection to the alleged procedural irregularity prior to, at the commencement of the hearing on the motion, or anytime during the hearing. Instead, she actively participated in the proceedings and waited to raise this issue until after the magistrate's decision was issued.
 {¶ 25} Ms. Boden has failed to convince this Court that the trial court lacked authority to place K.K. in the legal custody of his paternal grandmother. The first assignment of error is overruled.
 Assignment of Error II
"The trial court erred by finding that the award of legal custody was supported by the manifest weight of the evidence and in the child's best interest."
 {¶ 26} Ms. Boden next challenges the trial court's decision to place K.K. in the legal custody of her paternal grandmother. Specifically, she contends that the trial court's finding that legal custody was in K.K.'s best interest was against the manifest weight of the evidence.[2] When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001),141 Ohio App.3d 103, 115.
"The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Id., citing State v. Thompkins (1997),78 Ohio St. 3d 380, 387, quoting State v. Martin (1983),20 Ohio App. 3d 172, 175.
 {¶ 27} The juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact `residual parental rights, privileges, and responsibilities.'" In re Shepherd (Mar. 26, 2001), 4th Dist. No. 00CA12, quoting R.C. 2151.011(B)(17). Also, the trial court's disposition of legal custody is not guided by clear statutory requirements. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." In re N.P., 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23, citing In re Fulton, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11.
 {¶ 28} The trial court's determination that placing K.K. in the legal custody of his paternal grandmother was in his best interest was supported by the following evidence. CSB filed its dependency and neglect complaint in this case more than one year before the legal custody hearing, and had been involved with Ms. Boden on a voluntary basis for several months before that. During that time, Ms. Boden had taken very few steps to remedy the problems that led to K.K.'s removal. Ms. Boden had a drug and alcohol assessment, which indicated that she had problems with cocaine abuse, alcohol dependence, and opiate abuse, and Ms. Boden did not dispute that she did, in fact, have a substance abuse problem. Nonetheless, she had not been attending drug and alcohol counseling, nor had she been consistent in submitting urine samples for drug screening. It was not until the time of the legal custody hearing that she indicated a willingness to engage in treatment to remedy her drug and alcohol problem.
 {¶ 29} Ms. Boden also was diagnosed with bipolar disorder when she was a young teenager. Since that time, she has been in and out of treatment and on and off medication. Ms. Boden's case worker referred her to a service provider that provided many of the counseling services that she needed. Her case was later closed because she repeatedly missed appointments. The caseworker explained at the hearing that, due to Ms. Boden's failure to keep appointments, the service provider would no longer schedule appointments for her. The caseworker explained to Ms. Boden that she needed to wait on a stand-by basis for someone to cancel an appointment, but Ms. Boden never did so.
 {¶ 30} At the hearing, Ms. Boden testified that she did not believe that she suffered from bipolar disorder and indicated that she was scheduled to have another mental health assessment performed. She had not yet obtained another assessment, however, and the only evidence before the trial court was that Ms. Boden had bipolar disorder and was not getting the mental health treatment that she needed.
 {¶ 31} K.K. had some behavior problems that had been observed by his Head Start teachers. As part of the initial case plan, Ms. Boden was ordered to obtain a mental health assessment for K.K. and to follow through with any recommended treatment. Ms. Boden did not believe that K.K. needed counseling and did not follow through with obtaining a mental health assessment for the child for several months. At the intake interview with the counselor, Ms. Boden tended to minimize K.K.'s problems and did not report the extent of behavior problems that the Head Start teachers had been observing. While in Ms. Boden's custody, K.K. missed some of his scheduled counseling sessions. K.K. also had several absences from his Head Start classes.
 {¶ 32} K.K.'s current counselor explained that K.K. gets more anxious and depressed than other children and retreats into fantasy play rather than interacting in the real world and, for that reason, he needs continued counseling. Since living with his paternal grandmother, K.K. has attended counseling regularly and his behavior is improving. A social worker from Head Start, who meets with K.K. several times per week, testified that she had noticed that K.K.'s behavior was improving and he seemed to be happier and more relaxed, and he had been interacting more appropriately with the other children.
 {¶ 33} The paternal grandmother testified that, if the trial court placed K.K. in her legal custody, she was willing to be responsible for him until he reaches the age of eighteen. She had been caring for K.K. while he was living outside the home and she was ensuring that all of his needs were being met. She also indicated that she would facilitate visitation between K.K. and Ms. Boden and her side of the family.
 {¶ 34} The guardian ad litem testified that she "strongly recommend[ed]" that K.K. be placed in the legal custody of his paternal grandmother. She emphasized that Ms. Boden has been struggling with the same problems for years and has made no substantial progress toward remedying any of her problems. She further observed that K.K. had been living with his paternal grandmother and was happy in that placement.
 {¶ 35} Given the evidence before the trial court, this Court cannot say that it lost its way in finding that an award of legal custody to the paternal grandmother was in the best interest of K.K. The second assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J. concurs
Carr, J. concurs in judgment only.
[1] Ms. Boden had been placed on probation following a conviction of several driving violations and she was required to submit periodic urine samples for drug screening.
[2] Although Ms. Boden also asserts that the trial court applied an incorrect legal standard when ruling on a motion for legal custody by a non-parent, she did not separately assign or argue that alleged error. See App.R. 12(A)(1)(b) and App.R. 12(A)(2). Moreover, this Court is not inclined to revisit its position on that issue as set forth in In re D.R.,153 Ohio App.3d 156, 2003-Ohio-2852, particularly given that the issue is currently pending before the Ohio Supreme Court on a certified conflict. See In re C.R., 105 Ohio St.3d 1436, 2005-Ohio-531.