DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Sheila L. ("Mother"), has appealed from the decision of the Summit County Court of Common Pleas, Juvenile Division, which awarded legal custody of her six children to relatives. This Court affirms.
 I {¶ 2} On December 28, 2004, Summit County Children Services Board ("CSB") filed a complaint alleging that Mother's six children were dependent, neglected, or abused children. CSB filed its complaint in response to allegations that Mother had committed domestic violence against the father of several of the children. At the time of the filing of CSB's complaint, the children were still under the protective supervision of CSB which had resulted from a prior complaint and case plan. While Mother was in custody pending the resolution of the domestic violence charges, she was also charged with child endangerment for an incident which occurred on November 14, 2004. Mother eventually pled guilty to both domestic violence and child endangerment and received a term of probation for each offense.
 {¶ 3} On January 29, 2005, CSB filed a case plan, stating that its goal was reunification of the children with Mother. On February 2, 2005, Mother stipulated to a finding of dependency and neglect with respect to five of the children and to a finding of abuse with respect to the sixth child. On February 28, 2005, CSB filed motions requesting that the children be placed in the legal custody of three relatives. On March 24, 2005, the magistrate held a dispositional hearing, taking testimony regarding whether it was in the children's best interest to be placed with relatives. On April 1, 2005, the magistrate recommended granting CSB's motion for legal custody to the relatives. Mother timely objected to the magistrate's decision, and the trial court overruled her objections. On August 31, 2005, the trial court entered final judgment, awarding legal custody to the children's relatives. Mother has timely appealed from the trial court's judgment, raising four assignments of error for review.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED BY GRANTING LEGAL CUSTODY TO RELATIVES WHERE THE RELATIVES DID NOT FILE MOTIONS REQUESTING LEGAL CUSTODY AND THE MOVING AGENCY WAS WITHOUT AUTHORITY TO FILE A MOTION FOR SUCH A CHANGE OF DISPOSITION."
 {¶ 4} In her first assignment of error, Mother has asserted that the trial court erred in ruling on the motion filed by CSB. Specifically, Mother has argued that CSB lacked the authority to file a motion for legal custody on behalf of the children's relatives. We disagree.
 {¶ 5} This Court has previously rejected the argument raised by Mother, holding that CSB may file for legal custody on behalf of a relative. See In re: K.K., 9th Dist. No. 22352,2005-Ohio-3112, at ¶ 20-23 (finding also that CSB's motion provided the parent with adequate notice to protect her due process rights). Accordingly, Mother's assertion that CSB lacked the authority to file a motion for legal custody on behalf of the relatives lacks merit.
 {¶ 6} Mother has additionally argued that CSB's motion was untimely. Specifically, Mother has relied upon R.C. 2151.415, asserting that CSB did not file its motion more than thirty days prior to the dispositional hearing as required. Initially, we note that R.C. 2151.415 applies by its plain language to situations in which CSB has been granted temporary custody and CSB herein was granted only emergency temporary custody. Assuming arguendo, however, that the statute applies, Mother's claim lacks merit.
 {¶ 7} This Court has previously addressed the effect of CSB's failure to comply with the time limits contained in R.C.2151.415. In Endsley v. Endsley (1993), 89 Ohio App.3d 306, we found that "the statute's thirty-day requirement [is] directory rather than mandatory," and that the parent had not been prejudiced by CSB's failure to comply with the statute's requirements. Id. at 308. ("Because the time limit is directory, we do not believe the failure to file within thirty days constituted any more than harmless error.") In Endsley, we found it pertinent that the parents were given notice of the hearing and an opportunity to appear.
 {¶ 8} Herein, we are confronted with analogous facts. CSB filed its motion for legal custody twenty-four days before the dispositional hearing. Mother does not dispute that she received notice of the hearing. Further, she fully participated in the hearing. Mother's counsel cross-examined each of CSB's witnesses and Mother testified on her own behalf. Accordingly, as Mother was given notice and an opportunity to be heard, we find any failure of CSB to comply with R.C. 2151.415 to be harmless. Mother's first assignment of error, therefore, lacks merit.
 Assignment of Error Number Two
"THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY TO RELATIVES WHERE SUMMIT COUNTY CHILDREN SERVICES BOARD DID NOT USE REASONABLE CASE PLANNING AND DILIGENT EFFORTS AT REUNIFICATION WITH THE MOTHER."
 {¶ 9} In her second assignment of error, Mother has asserted that the trial court erred in finding that CSB used reasonable efforts to reunite the children with her. Specifically, Mother has argued that the short time period between the filing of her case plan and CSB's motion for legal custody compels a finding that CSB did not use reasonable efforts. This Court disagrees.
 {¶ 10} R.C. 2151.419(A) requires CSB to make "reasonable efforts" to prevent the continued removal of a child from his or her home. CSB bears the burden in demonstrating that it made reasonable efforts towards preventing the continued removal of the children. R.C. 2151.419(A)(1). Additionally, "[i]n determining whether reasonable efforts were made, the child's health and safety shall be paramount." Id.
 {¶ 11} Upon review of the record, we find that CSB presented ample evidence that it made reasonable efforts. CSB caseworkers testified that they prepared a case plan for Mother and provided her with a copy at the end of January 2005. The caseworkers continued, testifying that Mother, to their knowledge, had not completed any of the requirements set forth in the case plan, which included anger management and parenting classes and drug and alcohol treatment, despite several weeks to do so as the dispositional hearing did not take place until March 24, 2005. Caseworkers indicated that Mother had not even attempted during that time to contact the agency to ascertain her responsibilities. During her testimony, Mother admitted that she made no effort to contact CSB and expected CSB to continue to follow-up with her. The caseworkers indicated that such follow-up was not possible because Mother could never be located or reached by telephone. Furthermore, CSB social worker Tanya Vanderveen noted that when CSB filed the instant complaint, the children were under protective supervision. Vanderveen continued, testifying that the children were under protective supervision due to a recent, prior complaint filed by CSB.
 {¶ 12} Finally, CSB caseworkers testified about the extensive history that CBS has had with Mother and the children. Vanderveen testified about Mother's lengthy criminal history and noted that even when Mother was not in jail, the children spent a great deal of time living with relatives. Mother testified that she had been in jail on numerous occasions, including a six-month period in 2002. Mother also admitted during her testimony that the concerns raised in the instant case, including her inability to control her anger, were precisely the same concerns raised in her prior case plan.
 {¶ 13} Placing the children's health and safety as its paramount concern, the trial court had before it ample evidence that CSB made reasonable efforts to prevent the continued removal of the children from Mother. CSB caseworkers testified about their history with Mother and her complete failure to comply with her new case plan. Accordingly, this Court cannot say that the trial court erred in finding that CSB had made reasonable efforts. Mother's second assignment of error lacks merit.
 Assignment of Error Number Three
"THE TRIAL COURT'S DECISION GRANTING SUMMIT COUNTY CHILDREN SERVICES BOARD'S MOTION FOR LEGAL CUSTODY PLACEMENT WITH THE MINOR CHILDREN'S RELATIVES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR CONTRARY TO LAW."
 Assignment of Error Number Four
"THE TRIAL COURT'S DECISION GRANTING SUMMIT COUNTY CHILDREN SERVICES BOARD'S MOTION FOR LEGAL CUSTODY PLACEMENT WITH THE MINOR CHILDREN'S RELATIVES CONSTITUTED AN ABUSE OF DISCRETION."
 {¶ 14} In her third and fourth assignments of error, Mother has asserted that the trial court erred in its award of legal custody. Specifically, Mother has argued that the evidence introduced weighs strongly against an award of legal custody to the children's relatives. We disagree.
 {¶ 15} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115.
"The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Id., quoting State v. Thompkins (1997),78 Ohio St. 3d 380, 387, quoting State v. Martin (1983),20 Ohio App. 3d 172, 175.
 {¶ 16} The juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact `residual parental rights, privileges, and responsibilities.'" In re Shepherd (Mar. 26, 2001), 4th Dist. No. 00CA12, quoting R.C. 2151.011(B)(19). With respect to the award of legal custody, the trial court's disposition is not guided by clear statutory requirements. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." In reN.P., 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23, citing In reFulton, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11.
 {¶ 17} While it relates to permanent custody proceedings, we find the factors listed in R.C. 2151.414 provide guidance in determining whether a grant of legal custody is in the best interest of the children. R.C. 2151.414(D) provides as follows:
"In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"
Utilizing these factors, we find no error in the trial court's judgment.
 {¶ 18} While Mother urges that each of the above factors favor a finding that the children should remain in her custody, we find that a review of the testimony presented in the trial court supports the trial court's decision. CSB presented substantial evidence that it was in the children's best interest to be placed with the relatives.
 {¶ 19} We find the following undisputed facts pertinent to a finding that it was in the children's best interest to be placed with relatives. Vanderveen and CSB caseworker Janice Dillen testified regarding Mother's inability to stay out of jail. Vanderveen recounted Mother's criminal history as follows:
"Mom was charged with felonious assault with a weapon, domestic violence, aggravated trespassing, criminal damaging. An additional charge of burglary was later added to her charges, and of course you have heard Ms. Dillen testify to the fact that she had charges of child endangering."
Dillen testified that Mother's child endangerment charges stemmed from her striking one of the children in the face with a belt buckle. While other testimony appears to indicate that Mother did not intend to strike the child, she in fact pled guilty to child endangerment.
 {¶ 20} The trial court also heard testimony from each of the relatives seeking custody. Mother does not dispute any of the testimony and it establishes the following facts. Each of the children has adjusted well to living with the relatives. Their school attendance was poor while living with Mother and has improved since their new placement. In addition, academically the children are achieving at a higher level now that they are in a structured environment. Furthermore, CSB caseworkers confirmed that each of the homes were suitable for the children.
 {¶ 21} With respect to R.C. 2151.414(D)(1), the trial court heard extensive testimony regarding the children's relationship with their relatives. Mother admitted during her testimony that the children were cared for by a number of relatives on a routine basis and had formed a bond with those relatives. Furthermore, Vanderveen and Dillen both opined that the relatives were more suitable for custody because they could provide stability and routine for the children. The brief periods of time in which the children have lived with relatives demonstrated that such stability and routine has had a positive effect on each of the children. On the other hand, Mother's continued inability to obey the law demonstrates that she is unable to provide the children stability and routine. Accordingly, R.C. 2151.414(D)(1) supports the trial court's finding.
 {¶ 22} R.C. 2151.414(D)(2) also supports the trial court's finding. Due to the young ages of the children, their guardian ad litem, Ginny Adcock, expressed the children's wishes. First, Adcock testified that the children had witnessed domestic violence while in Mother's care and had begun to act out such violence while playing with one another. Adcock continued by testifying as follows. Mother undoubtedly loves her children, but is incapable of providing them a stable environment. Adcock has no concern with placing the children in different homes because they have repeatedly been living with different relatives throughout their lives, and those relatives have encouraged the children to stay close with one another. Adcock also testified about the abuse the children received at the hands of Terrance A., Mother's occasional boyfriend and the father of several of the children. Accordingly, Adcock recommended that the children be placed in the legal custody of the relatives.
 {¶ 23} The testimony introduced below also indicates that the children and Mother have a history with CSB. The children were under protective supervision from a prior referral when the complaint that generated the instant matter was filed. Accordingly, R.C. 2151.414(D)(3) supports the trial court's award of legal custody.
 {¶ 24} Finally, R.C. 2151.414(D)(4) supports the trial court's award of legal custody. Vanderveen, Dillen, Adcock, and each of the children's relatives seeking custody testified regarding the importance of stability in the children's lives. Each testified that the children had shown marked improvement in both their behaviors and academic achievements when placed in a stable environment. Mother has never been able to provide such an environment. The trial court, therefore, properly found that a legally secure placement could be achieved without granting permanent custody to the agency.
 {¶ 25} Accordingly, a review of the best interest factors favors an award of legal custody to the relatives. Mother's claim that the trial court's award of legal custody based upon the best interest of the children was against the manifest weight of the evidence lacks merit.
 III {¶ 26} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Boyle, J. Concur.