OPINION
{¶ 1} Appellant, Tracy Fulton, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her daughter, Jessalyn Fulton, to William Fulton, the child's natural father, and his present wife, Cheri Fulton ("the Fultons"). We affirm the decision of the trial court.
 {¶ 2} On August 26, 2001, around 7:00 P.M., a clerk at a UDF convenience store reported to police that five-year-old Jessalyn was wandering alone near the store. By the time police could respond, Jessalyn had crossed a busy street and an attendant at a Shell service station had taken her in. Jessalyn told police that she had been sent out to find her older brother. Police observed that she was dirty and not wearing shoes. Police recognized her since Jessalyn and her siblings had been observed wandering the neighborhood on other occasions. Butler County Children Services Board ("BCCSB") had received numerous complaints that appellant's children were not adequately supervised.
 {¶ 3} Police found Jessalyn's brother in the parking lot of their apartment complex, and transported both children home. While one officer watched Jessalyn and her older brother, another spoke with appellant, the children's mother, and asked if he could enter the apartment. Appellant consented and upon inspection, the officer observed "filth throughout the apartment." Food and dirt littered the floors and walls, the house reeked of feces and spoiled food, the only toilet in the apartment was not functional, and the apartment was generally in shambles. BCCSB was contacted and a caseworker responded. Upon further inspection of the apartment, appellant's two youngest children were found asleep on the floor of a back bedroom. The beds were unmade and soiled.
 {¶ 4} BCCSB subsequently filed a complaint alleging that Jessalyn was an abused, neglected and dependent child. Custody remained with appellant while BCCSB was to provide protective supervision. A case plan was put in place by BCCSB, but appellant participated in only some of the services offered her. In spite of completing a parenting course, appellant failed to demonstrate significant progress in the ability to adequately parent her children, particularly in disciplining and setting safe boundaries for the children. Appellant was largely uncooperative with caseworkers' attempts to visit her home. The children's day-care providers continued to report behavioral problems and relayed that the children often wore soiled clothing. In June 2002, after allegations of sexual abuse by her older brother arose, Jessalyn was placed in the temporary custody of the Fultons. All indications are that Jessalyn is well-cared for and thriving in the Fultons' home.
 {¶ 5} Jessalyn was adjudicated a neglected child in October 2001. In April 2002, the Fultons filed a motion requesting legal custody of Jessalyn. After a hearing on the matter, the trial court granted the motion. Appellant appeals, raising a single assignment of error:
 {¶ 6} "The trial court's decision to grant father permanent custody is not supported by clear and convincing evidence."
 {¶ 7} We must first dispel the misconception held by appellant and the state that this case involves a permanent custody decision terminating appellant's parental rights with regard to Jessalyn and granting permanent custody to the Fultons. In fact, permanent custody may only be granted to a public children services agency, and is not a vehicle for an individual to gain custody of a child. See R.C.2151.353(A)(4). In the present matter, the trial court granted legal custody, not permanent custody, of Jessalyn to the Fultons. Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact. See R.C.2151.011(B)(17). Unlike permanent custody, granting legal custody does not terminate the parent-child relationship. Indeed, appellant's parental rights were not terminated and she retains residual parental rights and responsibilities, including visitation rights and a duty of support.
 {¶ 8} An award of legal custody is provided for under R.C. 2151.353. Pursuant to this statute, if a child is adjudicated an abused, neglected or dependant child, the court may award legal custody "to either parent or to any other person who, prior to the dispositional hearing, files a motion for legal custody." R.C. 2151.353(A)(3). The Fultons filed a motion requesting legal custody, and William Fulton is Jessalyn's natural parent. The trial court awarded legal custody of Jessalyn, adjudicated neglected, to the Fultons.
 {¶ 9} In her assignment of error, appellant argues that the decision of the trial court awarding custody to the Fultons is not supported by the evidence. Appellant alleges that the trial court did not properly weigh the evidence and abused its discretion by granting the Fultons legal custody of Jessalyn. Appellant stresses that the Fultons did not prove by clear and convincing evidence that granting their motion for legal custody was in Jessalyn's best interest.
 {¶ 10} An appellate court will not reverse a juvenile court's determination of a custody dispute if the judgment is supported by clear and convincing evidence. In re Mitchell, Lake App. Nos. 2002-L-078 and 2002-L-079, 2003-Ohio-4102 (citations omitted). "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In reHolcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 11} A determination of a child's best interest remains the primary standard to be applied in custody cases. In re Pryor (1993),86 Ohio App.3d 327, 332. While there does not appear to be any definitive test or set of criteria to apply in determining the best interest of a child in parental custody proceedings incident to a dependency and neglect action, this court has previously held that the juvenile courts should consider the totality of the circumstances, including, to the extent they are applicable, those factors set forth in R.C. 3109.04(F). See In re Tyler Cloud (May 19, 1997), Butler App. No. CA96-01-002. There is, however, no statutory mandate that they be expressly considered and balanced before fashioning an award of custody under R.C. 2151.353(A)(3).Pryor at 336.
 {¶ 12} The evidence presented at trial reveals that Jessalyn had been in the temporary custody of the Fultons and was doing well in their home. She was clean, well-taken care of, and in all respects appeared happy in their custody. A home study revealed no concerns with the Fulton home. The Fultons facilitated appellant's visitation with Jessalyn by transporting her from their home in northern Kentucky to Butler County. Both the guardian ad litem and the court-appointed special advocate supported granting the Fultons legal custody of Jessalyn.
 {¶ 13} Appellant, on the other hand, continued to struggle with basic parenting skills. Although she completed parenting classes, her BCCSB social worker testified that she had made little progress. Appellant only sporadically applied the parenting concepts that were presented to her and the social worker supervising her visitation was often required to intervene. Appellant remained particularly ineffective at disciplining the children. Dr. Walters of the Children's Diagnostic Center evaluated appellant and found that her need for treatment is critical. His evaluation indicates that appellant minimizes her role in the children's problems, fails to recognize the need for her to provide structure and accountability in the children's lives, and relies on others to remedy the problems in her home.
 {¶ 14} Appellant failed to make any real progress in addressing these issues. Indeed, she continued to insist that the condition of her home when the children were first removed was due to the acts of teenage vandals. The alleged vandalism had occurred 12 days prior to the children's removal, and the home reportedly remained in the same filthy state during the intervening period. Although appellant demonstrates genuine affection for Jessalyn and was able to maintain a clean home during the course of the proceeding, she failed to demonstrate that she would be able to independently care for her children and protect them from future harm.
 {¶ 15} Reviewing the record, we find that the trial court's decision is supported by the evidence presented. Accordingly, appellant's assignment of error is overruled.
 {¶ 16} Judgment affirmed.