[Cite as *In re A.P.*, 2011-Ohio-441.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF:<br>A.P., H.P., E.U., AND E.G.<br>MINOR CHILDREN | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J.<br><br>Case No. 2010CA00302<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Stark County Court of Common Pleas,<br>Juvenile Division, Case No. 2009JCV01069 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 31, 2011 |
| APPEARANCES: | |

| | |
|---|---|
| For Appellee | For Appellant |
| LISA A. LOUY<br>Stark County Department<br>of Job and Family Services<br>300 Market Avenue North<br>Canton, Ohio 44702 | JOHN A. DANKOVICH<br>Stark County Public Defender<br>200 West Tuscarawas St., Ste. 200<br>Canton, Ohio 44702 |

*Hoffman, P.J.*

{¶1} Appellant Amy Patterson ("Mother") appeals the September 23, 2010 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which granted legal custody of three of her minor children to Violet McMasters. Mother also appeals the trial court's September 24, 2010 Judgment Entry and Findings of Fact and Conclusions of Law, which granted permanent custody of her youngest child to Appellee Stark County Department of Job and Family Services ("SCJFS").[1]

## STATEMENT OF THE CASE AND FACTS

{¶2} On August 20, 2009, SCJFS filed a Complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging Mother's four children, A.P. (DOB 12/12/03), H.P. (DOB 2/12/05), E.U. (DOB 3/15/06) and E.G. (DOB 7/22/08) to be neglected and/or dependent children, and seeking emergency temporary custody of the children. Following a shelter care hearing on the same day, the trial court committed the children to the temporary custody of SCJFS.

{¶3} On September 16, SCJFS amended the Complaint, withdrawing the allegation of neglect. Mother and the fathers of the children stipulated to a finding of dependency. The trial court found the children dependent, and placed A.P., H.P., and E.U. in the temporary custody of SCJFS. The trial court placed E.G. with her father under protective supervision. Subsequently, on October 9, 2009, the parties filed an agreed Judgment Entry, granting temporary custody of A.P., H.P., and E.U. to Violet McMasters, a third party placement.

---

[1] The fathers of the children are not parties to this appeal.

{¶4} SCJFS filed a motion on January 6, 2010, asking the court to temporarily suspend all of the parents' visitation based upon the report of the three eldest children's counselors. The trial court granted the motion, and temporarily suspended the parents' visitation. On February 8, 2010, SCJFS filed for emergency post-dispositional temporary custody of E.G., which the trial court granted. E.G.'s father requested a full evidentiary hearing on the issue. The parents also asked the trial court to address the issue of visitation.

{¶5} On March 3, 2010, the trial court heard testimony relative to SCJFS's request for temporary custody of E.G. as well as the suspension of visitation. The trial court found probable cause and awarded temporary custody of E.G. to SCJFS. The trial court ordered visitation between the parents and children remain suspended. The trial court scheduled the matter for review on May 6, 2010. At that time, the parents again requested an evidentiary hearing regarding visitation. Following an evidentiary hearing on July 1, 2010, the trial court found it was in the children's best interest to continue the order of no visitation.

{¶6} On July 13, 2010, SCJFS filed a motion for change of legal custody of A.P., H.P., and E.U. to McMasters. The trial court scheduled a hearing on the motion for July 30, 2010. Also on July 13, 2010, SCJFS filed a motion for permanent custody of E.G. The trial court scheduled the permanent custody hearing for September 14, 2010. SCJFS filed an amended motion for permanent custody on July 21, 2010, and the trial court rescheduled the hearing for September 22, 2010. The trial court also rescheduled the hearing on a motion for change of legal custody to September 22, 2010.

{¶7} At the hearing, the fathers of A.P., H.P., and E.U. stipulated to the change of legal custody to McMasters.

{¶8} Jennifer Hafner, an ongoing caseworker with SCJFS, testified Mother's case plan required her to undergo assessments at Northeast Ohio Behavioral and at Melymbrosia, attend Goodwill Parenting, and attend counseling. Hafner noted the testing conducted at Northeast Ohio Behavioral indicated Mother had an IQ of 60, with the verbal skills of an eleven year old, and the non-verbal skills of a five year old. Dr. Thomas, the evaluator, had grave concerns about Mother, and recommended she not regain custody of the children. The evaluator at Melymbrosia recommended SCJFS move forward in placing the children. The Melymbroisa evaluator also noted continuing to suspend visitation would be more beneficial for the children if the agency intended to proceed toward permanent custody. The parenting instructor at Goodwill had grave concerns regarding Mother's self-reporting of anger issues as well as Mother's ability to independently meet the needs of the children. Goodwill could not recommend reunification. The counselor at Renew, likewise, could not recommend reunification. Hafner added Mother completed a drug and alcohol assessment and there were no concerns.

{¶9} Hafner also detailed how SCJFS initially became involved with the family. She explained SCJFS attempted to work with the family on a non-court basis as the result of domestic violence concerns between Mother and E.G.'s father as Mother appeared unable to protect the children. SCJFS filed the Complaint after an agency worker visited Mother's new residence and found the home to be in deplorable condition. Subsequently, Dr. Cynthia Keck-McNulty of Northeast Ohio Behavioral

evaluated A.P., H.P., and E.U., and found the children had been victims of sexual abuse perpetrated upon them by Mother and E.G.'s father. When asked the effect of Mother's IQ on the children, Hafner stated SCJFS was concerned about Mother's ability to make appropriate choices. She explained Mother repeatedly lived in extremely unsafe homes and allowed unsafe adults around the children. Hafner concluded Mother was unable to remedy the conditions which caused the initial removal of the children from her care.

{¶10} Hafner also testified during the best interest phase of the hearing. Hafner stated E.G. is currently placed in a foster to adopt home, and her foster parents have expressed a desire to adopt her. E.G. has a strong bond with her foster parents and refers to them as "Mommy" and "Daddy". E.G. has minor speech delays, but the issue is being handled by her foster parents. Hafner believed it was in E.G.'s best interest to grant permanent custody to SCJFS, and any harm caused by severing the child's bond with Mother was outweighed by her need for permanency.

{¶11} Via Judgment Entry filed September 23, 2010, the trial court granted legal custody of A.P., H.P., and E.U. to Violet McMasters. Via Judgment Entry filed September 24, 2010, the trial court terminated Mother's parental rights, privileges, and responsibilities with respect to E.G., and granted permanent custody of the child to SCJFS. The trial court issued findings of fact and conclusions of law relative to this order.

{¶12} It is from these entries Mother appeals, raising the following assignments of error:

{¶13} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD E.G. CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A

REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND

SUFFICIENCY OF THE EVIDENCE AND IN VIOLATION OF THE AMERICANS WITH

DISABILITIES ACT OF 1990 (42 USC 12101 ET SEQ.); AS WELL AS AGAINST THE

DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE UNITED STATES

CONSTITUTION AND THE INALIENABLE RIGHTS CLAUSE OF THE OHIO

CONSTITUTION.

{¶14} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST

INTEREST OF THE CHILD E.G. WOULD BE SERVED BY GRANTING PERMANENT

CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE

EVIDENCE.

{¶15} "III. THE JUDGMENT OF THE TRIAL COURT GRANTING CHANGE OF

LEGAL CUSTODY IN THE BEST INTERESTS OF THE CHILDREN WAS AGAINST

THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶16} This case comes to us on the expedited calendar and shall be considered

in compliance with App.R. 11.1(C).

I

{¶17} In her first assignment of error, Mother contends the trial court's finding

E.G. could not and should not be placed with her within a reasonable period of time was

against the manifest weight and sufficiency of the evidence.  Mother adds such finding

violated the Americans with Disabilities Act as well as her constitutional rights to due

process and equal protection.

{¶18} As an appellate court, we neither weigh the evidence nor judge the

credibility of the witnesses. Our role is to determine whether there is relevant,

competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v.. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

{¶19} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶20} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶21} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial

court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶22} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶23} As set forth in our Statement of the Facts and Case, supra, Mother completed the assessments and parenting classes required by her case plan. However, Mother did not alleviate the problems which caused the initial removal of the children.  All of the service providers expressed deep concerns about Mother's ability to parent the children and not one of them could recommend reunification.  The service providers further reported to having grave concerns about Mother's ability to protect the children.

{¶24} With regard to Mother's argument the trial court's finding violated the Americans with Disabilities Act, we note Mother did not raise this issue to the trial court. Accordingly, Mother has waived this right to raise this issue on appeal.  See, Juv.R. 40 (E)(3)(d).   Likewise, Mother has waived her equal protection and due process arguments as she failed to raise these arguments before the trial court.

{¶25} Mother's first assignment of error is overruled.

II

{¶26} In her second assignment of error, Mother contends the trial court's finding it would be in E.G.'s best interest to grant permanent custody to SCJFS was against the manifest weight and sufficiency of the evidence.

{¶27} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶28} Jennifer Hafner testified E.G. was placed in a foster to adopt home and the family had expressed both verbal and written interest in adopting her. E.G. is very bonded to her foster parents, and calls them "Mommy" and "Daddy". E.G.'s visits with Mother were characterized as "routine" to the child as she did not have any separation anxiety when leaving Mother at the end of the visit. E.G. has some minor delays in her speech which are being addressed by the foster parents.

{¶29} The caseworker opined permanent custody would be in the best interest of E.G. given the safety concerns with Mother. Not one of the service providers could recommend reunification of Mother with any of the children. Also, E.G.'s guardian ad litem recommended the trial court grant permanent custody of the child to SCJFS.

**{¶30}** Based upon the foregoing, we find the trial court's finding it was in E.G.'s best interest to grant permanent custody was not against the manifest weight or based upon insufficient evidence.

**{¶31}** Mother's second assignment of error is overruled.

III

**{¶32}** In her final assignment of error, Mother contends the trial court's granting legal custody of her three eldest children was against the manifest weight and based upon insufficient evidence.

**{¶33}** The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re N .P.,* 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23. The factors listed in R.C. 2151.414 may provide some guidance in determining whether a grant of legal custody is in the best interest of the children. *In re T.A.,* 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17.

**{¶34}** In *In re Fulton,* 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11, the Twelfth District Court of Appeals addressed a legal custody determination between parents in a neglect situation. The *Fulton* Court indicated, when determining the issue of legal custody, courts should consider the totality of the circumstances, including relevant factors of R.C. 3109.04(F). The *Fulton* Court, however, cautioned there is no statutory mandate those factors must be expressly considered and balanced together before fashioning an award of custody. *Fulton,* 2003-Ohio-5984, at ¶ 11. Accordingly, in legal custody cases, trial courts should consider all factors relevant to the best interest of the child.

**{¶35}** As discussed, supra, the testimony presented at the permanent custody hearing reveals Mother could do little to remedy the conditions which initially led to the removal of the children from her home. The service providers could not recommend reunification. All of the service providers expressed concerns about Mother's ability to care for and protect the children. The therapist of the three older children testified the children had been severely traumatized while under Mother's care. Even the mention of visits with Mother caused traumatic responses from them. The therapist could not recommend even having the children visit with Mother, emphasizing their needs for consistency and stability.

**{¶36}** Based upon the following, the trial court properly found granting legal custody of the three older children to McMasters was in their best interest.

**{¶37}** Mother's third assignment of error is overruled.

By: Hoffman, P.J.

Wise, J. and

Edwards, J. concur

s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:
A.P., H.P., E.U., AND E.G.
MINOR CHILDREN                              :
                                            :
                                            :
                                            :
                                            :
                                            :        JUDGMENT ENTRY
                                            :
                                            :
                                            :
                                            :        Case No. 2010CA00302


        For the reasons stated in our accompanying Opinion, the judgment of the Stark

County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to

Appellant.




                                        s/ William B. Hoffman _____
                                        HON. WILLIAM B. HOFFMAN


                                        s/ John W. Wise_____
                                        HON. JOHN W. WISE


                                        s/ Julie A. Edwards_____
                                        HON. JULIE A. EDWARDS