[Cite as *In re JC*, 2012-Ohio-3939.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
|  | : | Patricia A. Delaney, P.J. |
|  | : | William B. Hoffman, J. |
| J.C., S.C., AND B.M. | : | Julie A. Edwards, J. |
|  | : |  |
|  | : | Case No. 2012CA00051 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Civil Appeal from Stark County
Court of Common Pleas Case,
Juvenile Division, No. 2010JCV01439

JUDGMENT:         Affirmed

DATE OF JUDGMENT ENTRY:         August 27, 2012

APPEARANCES:

For Plaintiff-Appellee         For Defendant-Appellant

JIM PHILLIPS         MARY G. WARLOP
Stark County Department of Job &amp;         Abney Law Office, LLC
Family Services Legal Counsel         116 Cleveland Ave., N.W., Suite 500
110 Central Plaza South, Suite 400         Canton, Ohio  44702
Canton, Ohio  44702

*Edwards, J.*

{¶1} Appellant, Julie Carnes, appeals a judgment of the Stark County Common Pleas Court, Juvenile Division, awarding permanent custody of her children J.C. (dob 7/23/2000) and B.M. (dob 11/25/2007) to appellee Stark County Department of Job and Family Services and awarding legal custody of her daughter S.C. (dob 1/4/2002) to a third party.

## STATEMENT OF FACTS AND CASE

{¶2} From August, 2009, to June 25, 2010, appellee attempted to work with appellant on a non-court basis regarding concerns that she missed J.C.'s mental health appointments, did not have utilities, and physical and sexual abuse was occurring in the home. J.C. was exhibiting aggressive and suicidal behavior. On June 25, 2010, appellee filed a complaint requesting that J.C. be placed in the temporary custody of appellee and that protective supervision be granted over S.C. and B.M. The children were found to be dependent on August 30, 2010, and the agency's request was granted. On October 25, 2010, S.C. and B.M. were also placed in the temporary custody of the agency, and all three children remained in the custody of the agency during the pendency of the case.

{¶3} Appellant's case plan required her to complete a parenting evaluation at Northeast Ohio Behavioral Health, complete a drug and alcohol assessment, complete Goodwill Parenting, complete Renew, and maintain stable housing and employment.

{¶4} Appellant completed the parenting evaluation at Northeast Ohio Behavioral Health. The examiner recommended that the children be removed from appellant's care. Due to appellant's cognitive limitations, the examiner could not make

any recommendations to deal with appellant's parenting practices in a way that would allow reunification with her children. The examiner had very grave concerns about appellant's ability to deal with the profound developmental disabilities and emotional problems of the children and was concerned appellant did not have the insight necessary to provide a safe home environment.

{¶5} Appellant completed Goodwill Parenting, but the instructor could not recommend that the children be returned to her custody. Her instructor indicated that due to appellant's cognitive limitations, it was difficult to determine the level of her comprehension and understanding of the material. She understood things only in a very concrete manner and had difficulty adapting the materials to fit specific circumstances.

{¶6} To address appellant's history of involvement in abusive relationships, she participated in counseling at Renew. She completed the education group and counseling, but her prognosis was guarded because she had limited insight as to how to apply the knowledge she gained from the program to her personal relationships. In spite of the resources made available to her beginning in August, 2009, she continued to involve herself in relationships with men with criminal histories which resulted in domestic violence. She was aware that S.C.'s father, who was in prison at the time of the hearing in the instant case, was touching S.C. in an inappropriate manner. The children expressed concerns about excessive physical discipline and emotional abuse.

{¶7} S.C. suffers from post traumatic stress and receives counseling due to sexual abuse by her father, exposure to domestic violence, parental substance abuse, mental and physical abuse, and neglect. Her interaction with her custodians was very

good, and she made progress in school during her placement with them. She stated that it's not safe for her to live with her mother, and her placement parents make her feel special.

{¶8} J.C. suffers from pervasive developmental delays. He was hospitalized in Akron Children's Hospital for psychiatric treatment on multiple occasions. He greatly improved while in foster care, and his behavior and attitude had changed dramatically. His anxiety significantly decreased, he verbalized his emotions more effectively and most of the time behaved appropriately. His grades improved and his level of functioning while in therapeutic foster care was the most stable he had been since he was admitted to Child and Adolescent Behavioral Health for treatment.

{¶9} B.M. has speech delays and cognitive delays. He has an Individualized Education Plan and is in speech therapy. His speech significantly improved after his placement in foster care.

{¶10} Following an evidentiary hearing, the trial court found that the children could not be placed with appellant within a reasonable time, and that the best interests of J.C. and B.M. required an award of permanent custody to appellee. The trial court also granted legal custody of S.C. to the people she is placed with. Appellant appeals, assigning three errors:

{¶11} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING LEGAL CUSTODY OF S.C. TO THIRD PARTIES AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT SUCH DECISION WAS IN S.C.'S BEST INTEREST."

I

{¶14} In her first assignment of error, appellant argues that the court's finding that the children could not be placed in her custody within a reasonable period of time is against the manifest weight of the evidence.

{¶15} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118; *In re: Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 481 N.E.2d 613.

**{¶16}** In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60; See also, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74, 564 N.E.2d 54.

**{¶17}** Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273:

**{¶18}** "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

**{¶19}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, *In re: Christian,* Athens App. No. 04CA10, 2004-Ohio-3146; *In re: C. W.,* Montgomery App. No. 20140, 2004-Ohio-2040.

{¶20} Pursuant to 2151.414(B)(1), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

{¶21} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, ... and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents.* * *"

{¶22} Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":

{¶23} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents

for the purpose of changing parental conduct to allow them to resume and maintain parental duties.* * *

**{¶24}** "(16) Any other factors the court considers relevant."

**{¶25}** A trial court may base its decision that a child cannot or should not be placed with a parent within a reasonable time upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738; *In re: Hurlow* (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1998 WL 655414; *In re: Butcher* (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.

**{¶26}** Appellant argues that she complied with the case plan, and if the risk she posed to her children was not remedied by these services, then the agency should have provided other services.

**{¶27}** The trial court found that appellant complied with the case plan. However, the evidence was undisputed that she did not remedy the problems which caused the children to be placed outside the home in spite of her compliance with the case plan.

**{¶28}** Appellant completed the parenting assessment at Northeast Ohio Behavioral Health, but the examiner recommended that the children not be placed in appellant's custody. The examiner found appellant to be cognitively limited and she could not recommend any services that would allow appellant to reunify with the children due to the severe nature of appellant's parenting practices. The Goodwill instructor did not recommend that the children be returned. The instructor testified that appellant had difficulty controlling her children during visits and became frustrated

during visits. While she received a certificate of completion, the certificate was the next to the lowest one available, and to have received the lowest certificate, appellant would have had to have done nothing. At the time of the hearing, appellant did not have stable housing. Appellant was discharged from the Renew program after reaching maximum therapeutic gain, but concerns continued that she could not put what she learned into practice. She had been involved in violent relationships in the past and the issue of domestic violence was an ongoing concern, putting the children at risk of continued harm. S.C. was sexually abused by her father, but appellant allowed the father to have contact with S.C. even after appellant learned of the abuse. The evidence established that after two years of services, appellant failed to understand the risk of harm her behavior caused the children, and continued to believe the children were removed for "bullshit reasons." Tr. 23.

{¶29} Appellant also argues that other case plan services should have been made available to her. The case plan was reviewed every six months, yet appellant at no point before the permanent custody trial suggested that different services should have been made available. While appellant attended all programs made available to her, she was unable to internalize and apply the information she received. The record does not demonstrate that if she had been offered different case plan services, the result would have been different. In fact, the examiner at Northeast Ohio Behavioral Health could not come up with any services to recommend which would make reunification possible.

{¶30} The first assignment of error is overruled.

II

{¶31} In her second assignment of error, appellant argues that the court's finding that a grant of permanent custody was in the best interests of J.C. and B.M. is against the manifest weight of the evidence.

{¶32} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶33} When the case opened, J.C. was a very aggressive child, who had threatened to kill his family and himself. He had been hospitalized in the psychiatric unit of Akron Children's Hospital several times. After being in foster care for a year and a half, he was no longer aggressive and acted like a different child. His therapist reported that J.C. was functioning at his most stable and recommended that the child not be returned to appellant. J.C. had not visited with appellant in almost a year at the time of trial on the recommendation of his therapist. He has limited telephone contact with appellant, but when he does talk to appellant, he acts out. He has very little bond with appellant, and his foster parents have expressed a desire to adopt him.

{¶34} B.M. was very delayed and had speech problems when removed from appellant's custody. While he still has speech problems, his speech has improved since he entered foster care and he has an IEP in preschool to address his developmental issues. He is very bonded to his foster parents and they have expressed a desire to adopt him.

{¶35} The court's finding that a grant of permanent custody of J.C. and B.M. to appellee was in the best interests of the children was not against the manifest weight of the evidence. The second assignment of error is overruled.

III

{¶36} Appellant argues that the court erred in awarding legal custody of S.C. to her foster parents.

{¶37} This Court has set forth the standard of review regarding a grant of legal custody to a non-parents:

{¶38} "The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re N.P.,* 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23. The factors listed in R.C. 2151.414 may provide some guidance in determining whether a grant of legal custody is in the best interest of the children. *In re T.A.,* 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17.

{¶39} "In *In re Fulton,* 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11, the Twelfth District Court of Appeals addressed a legal custody determination between parents in a neglect situation. The *Fulton* Court indicated, when determining the issue of legal custody, courts should consider the totality of the circumstances, including

relevant factors of R.C. 3109.04(F). The *Fulton* Court, however, cautioned there is no statutory mandate those factors must be expressly considered and balanced together before fashioning an award of custody. *Fulton,* 2003-Ohio-5984, at ¶ 11. Accordingly, in legal custody cases, trial courts should consider all factors relevant to the best interest of the child." *In re A.P.,* 5[th] Dist. No. 2010CA00302, 2011-Ohio-441, ¶33-34.

{¶40} In the instant case, the evidence as reviewed above demonstrated that appellant completed her case plan as far as participation, but failed to internalize the information and apply it so as to remedy the conditions that led to the removal of the children from the home. S.C. suffers from post traumatic stress and receives counseling for sexual abuse by her father, exposure to domestic violence, parental substance abuse, mental and physical abuse, and neglect. Her interaction with her custodians was very good, and she made progress in school during her placement with them. Her treating therapist recommended that S.C. remain with her foster parents. The court conducted an interview with S.C., and she indicated that she did not believe it was safe for her to live with appellant and she wanted to remain with her foster parents. S.C. had been sexually abused by her father, and despite knowledge of the abuse, appellant continued to allow him to have contact with S.C. The trial court's finding that an award of legal custody of S.C. to her foster parents was in the best interests of S.C. is not against the manifest weight of the evidence.

**{¶41}** The third assignment of error is overruled.

**{¶42}** The judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed.

By: Edwards, J.

Delaney, P.J. and

Hoffman, J. concur

_____

_____

_____

           JUDGES

JAE/r0619

[Cite as *In re JC*, 2012-Ohio-3939.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                 :

J.C., S.C., AND B.M.            :

 

 

:      JUDGMENT ENTRY

 

 

:      CASE NO. 2012CA00051

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES