[Cite as *In re D.D.*, 2017-Ohio-4212.]

STATE OF OHIO        )         IN THE COURT OF APPEALS
                     )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

IN RE: D.D.                            C.A. No.     16CA011039
        D.M.
        D.D.
        B.S.
        B.S.                       APPEAL FROM JUDGMENT
        S.R.                       ENTERED IN THE
                                    COURT OF COMMON PLEAS
                                    COUNTY OF LORAIN, OHIO
                                    CASE Nos.   14JC44220
                                                 14JC44221
                                                 14JC44222
                                                 14JC44223
                                                 14JC44224
                                                 14JC44225

DECISION AND JOURNAL ENTRY

Dated: June 12, 2017

CALLAHAN, Judge.

**{¶1}** Appellant, Charmaine D. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed her minor children in the legal custody of three different relatives. This Court affirms.

I.

**{¶2}** Mother is the biological mother of the six minor children at issue in this appeal. The children's fathers did not appeal from the trial court's judgment.

**{¶3}** During September 2014, Lorain County Children Services ("LCCS") began working with this family through a case that had been transferred from Cuyahoga County. Although initial concerns about abuse of the children were not substantiated, LCCS later filed complaints to allege that Mother was not meeting the basic needs of the children and that they

were being exposed to Mother's mental health problems and domestic violence between Mother and the father of the youngest child ("Father R.").

{¶4} The children were adjudicated neglected and dependent and initially remained in the custody of Mother under an order of protective supervision by LCCS. During August 2015, because Mother was not complying with the reunification requirements of the case plan, the children were placed in the temporary custody of different relatives with protective supervision by LCCS.

{¶5} The case plan reunification goals included that Mother engage in treatment to address her long-term problems with domestic violence, mental illness, and substance abuse; complete parenting classes; and obtain stable income and housing. The case plan also required her to have no contact with Father R., who was convicted of domestic violence against her. Mother had a long history of domestic violence with Father R. and other men with whom she had been romantically involved.

{¶6} After the children were removed from her home, Mother initially worked on the reunification goals of the case plan. LCCS eventually permitted Mother to have weekend visits with the children until it learned that Father R. had been in Mother's home during the visits. During one of those visits, the children had again been exposed to an altercation between Mother and Father R. Although LCCS continued to receive reports that Father R. had been to her home, Mother denied that Father R. had been there.

{¶7} LCCS later moved to have three of the children placed in the legal custody of the maternal grandmother, two of them placed in the legal custody of a paternal aunt of one of the children, and the youngest child placed in the legal custody of a maternal aunt. Mother alternatively moved to have the children returned to her legal custody or for a six-month

extension of temporary custody. Following a hearing on the competing dispositional motions, the magistrate decided that the children should be placed in the legal custody of the respective relatives. The trial court later overruled Mother's objections to the magistrate's decision and placed the children in the legal custody of the relatives. Mother appeals and raises three assignments of error.

II.

### ASSIGNMENT OF ERROR NUMBER ONE

THE TRIAL COURT'S DECISION WAS AN ABUSE OF DISCRETION, WHEN IT DENIED APPELLANT'S OBJECTIONS AND GRANTED LEGAL CUSTODY OF THE MINOR CHILDREN TO THEIR RESPECTIVE TEMPORARY CUSTODIANS.

### ASSIGNMENT OF ERROR NUMBER TWO

THE AWARD OF LEGAL CUSTODY TO THE RESPECTIVE TEMPORARY CUSTODIANS WAS NOT IN THE BEST INTEREST OF THE MINOR CHILDREN.

{¶8} Mother's first two assignments of error will be addressed together for ease of review. Mother argues that the trial court erred in determining that it was in the best interest of her children to be placed in the legal custody of the respective relatives rather than to be returned to her legal custody.

{¶9} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶10} The evidence pertaining to the best interest of the children supported the trial court's decision. "[T]his Court has held that the best interest test set forth in R.C. 2151.414(D), although it relates to permanent custody, 'provide[s] guidance' in legal custody determinations." *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, quoting *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and the need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶11} Several witnesses testified about Mother's interaction with the children during this case. Although it was not disputed that Mother and her children love each other, the primary concern of LCCS was Mother's ability to protect the children from Father R., with whom she had a long history of domestic violence. Because the children were afraid of Father R., the older children had learned to protect themselves and their younger siblings by gathering their siblings and hiding in another room during the arguments. Several of the children were in counseling because of the ongoing violence that they had witnessed and the behavioral problems that they exhibited.

{¶12} After the children were removed from her home, Mother initially complied with the case plan by completing parenting classes and engaging in substance abuse, mental health, and domestic violence counseling. Consequently, her visits with the children progressed to off-site, overnight visitation at Mother's home. Because Mother lived in a one-bedroom apartment that did not allow children, LCCS had arranged with the apartment manager for the children to visit three at a time on alternating weekends.

{¶13} After four or five weekend visits, however, LCCS learned that Mother had allowed Father R. to be in the home, in violation of the case plan. Several of the children independently reported that Father R. was often in the home during visits, he hid in a closet when visitors came, and Mother told them not to tell anyone that Father R. had been there. On one occasion, Mother and Father R. got into an altercation, so Mother walked with her children for 1.6 miles in the cold to reach Grandmother's home.

{¶14} Mother had repeatedly told the caseworker that she was afraid of Father R. and that she planned to end her relationship with him. Nevertheless, she continued to be involved with him, lied to the caseworker about it, and told her children to lie. Several of the children had been working with their counselors and temporary custodians about the importance of being honest. They were troubled that Mother had asked them to lie.

{¶15} After the caseworker learned about Father R. being present during visits, she made an unannounced visit to Mother's apartment. While the caseworker was there, she could see a male figure hiding in the closet. Mother initially denied that there was a person in the closet. When the caseworker explained that she could see and hear someone inside the closet, Mother refused to disclose the identity of the man or tell him to come out of the closet. Because LCCS was concerned that Mother was failing to protect her children from Father R., visitation was relocated to the visitation center.

{¶16} During the hearing, Mother again denied that she had maintained a relationship with Father R. She testified that her children had told the caseworker "stories" and suggested that they were lying about Father R. being in her apartment. When asked about the man hiding in the closet during the caseworker's unannounced visit, Mother explained that it was another man, with whom she had been involved for approximately nine months, but that she had never

told LCCS about him. Mother did not explain, however, why the man hid in the closet or why she had failed to inform LCCS about a man who would potentially be around her children.

{¶17} After Mother's visits were returned to the visitation center, her compliance with the case plan became more sporadic. She missed many visits and did not attend many of the children's extracurricular events, which disappointed the children. At the hearing, Mother admitted that she was not consistently taking her psychiatric medication, that she had never completed drug treatment, and that she was no longer submitting to drug testing. Mother also testified that she was not employed at that time and that she lived in a one-bedroom apartment in a complex that did not allow children.

{¶18} With their respective caregivers, on the other hand, all of the children's needs were being met. They had shown significant improvements in their behavior and school performance and felt safe in the homes of their temporary caregivers. Although Mother argues that being placed in separate homes was not in her children's best interest, the caregivers had arranged for the children to frequently visit each other, including overnight, weekend visits. The guardian ad litem and the caseworker fully supported the relatives' requests for legal custody.

{¶19} The wishes of the children were not set forth in the record, but the guardian ad litem opined that it was in the best interest of the children to remain in the homes of their respective relatives where they had been living for several months. Mother emphasizes on appeal that, aside from the year that this case was pending, the children had lived in her custody for their entire lives. During those years, however, they were exposed to ongoing domestic violence and were currently engaged in counseling to address their emotional and behavioral problems that had resulted from that trauma.

{¶20} Mother's six children were in need of a legally secure permanent placement. Although Mother argues that she was prepared to provide the children with a stable home at the time of the hearing, the record demonstrates otherwise. Mother admitted that she lacked stable income or housing, and that she was not complying with the mental health or substance abuse components of the case plan. Mother did not admit that she had failed to resolve her problems with domestic violence, but the evidence before the court demonstrated that Mother continued to expose her children to the threat of domestic violence and attempted to conceal her actions from LCCS.

{¶21} Therefore, Mother has failed to demonstrate any error in the trial court's conclusion that it was in the best interest of three of the children to be placed in the legal custody of the maternal grandmother, of two of the children to be placed in the legal custody of a paternal aunt, and of the youngest child to be placed in the legal custody of a maternal aunt. Mother's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR NUMBER THREE

THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR AN EXTENSION OF TEMPORARY CUSTODY, DESPITE OVERWHELMING EVIDENCE THAT SHE HAD MADE SUBSTANTIAL AND SIGNIFICANT CASE PLAN PROGRESS, AND WAS UTILIZING THOSE SKILLS IN HER DECISION MAKING [FOR] THE CHILDREN.

{¶22} Through her final assignment of error, Mother alternatively argues that the trial court should have extended temporary custody for another six months because she had been making significant progress on the reunification goals of the case plan. She cites R.C. 2151.415(D)(1), which authorizes the trial court to extend temporary custody:

if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child

will be reunified with one of the parents or otherwise permanently placed within the period of extension.

**{¶23}** As this Court explained through its disposition of Mother's first two assignments of error, the evidence failed to demonstrate that Mother had made significant progress on the reunification goals of the case plan. Specifically, at the time of the hearing, she was not complying with the mental health, substance abuse, or domestic violence components of the case plan. Moreover, she lacked stable income and housing. Because Mother had not made significant progress on the reunification requirements of the case plan, the trial court did not err in denying her request for a six-month extension of temporary custody. Mother's third assignment of error is overruled.

### III.

**{¶24}** Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

BRANDON G. OLIVER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and PREETHI KISHMAN, Assistant Prosecuting Attorney, for Appellee.